# GEORGE A. WILKINS

*v.*

# NOAH MARSHALL.

1. RESIDENCE—*whether lost by leaving the State.* A party who leaves this State, without any settled intention of acquiring a residence elsewhere, but only with a conditional intention of so doing, does not lose his residence here so long as that intention remains conditional.

2. A resident of this State left it with a view to seeking a better climate, and if he found one that suited him, and everything else was agreeable, of making it his home, but with no particular place in view. He visited Iowa, Nebraska and Kansas, and in the latter State he took a contract to do some hauling for a railroad bridge being built. There he was taken sick, and returned to his former home in this State, never having acquired a residence or determined to make his residence at any other place than in Illinois, and having been absent, in all, about seven months: *Held,* that he did not lose his residence in Illinois.

3. EVIDENCE—*as to intent of one to change his residence.* On the trial of a contested election case, where the ground of contest was, that the party elected had lost his residence by leaving the State, the contestant called the claimant as a witness, and, whilst he was on the witness stand, one of the jurors asked him what was his intention when he went away—was it to make a visit, or for some other purpose? The contestant objected to the question, and the court sustained the objection: *Held*, that the testimony called for by the question was proper, and it was error to exclude it.

APPEAL from the County Court of Peoria county; the Hon. JOHN C. YATES, Judge, presiding.

Messrs. INGERSOLL & PUTERBAUGH, and Mr. W. S. BUSH, for the appellant.

Messrs. JOHNSON & HEWETT, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from the decree of the county court of Peoria county, in a proceeding instituted therein, under chapter 46 of the revision of 1874, to contest the election of appellant to the office of collector of the town of Radner, in that county.

The point of contest was, ineligibility to hold office, for the reason that appellant was not, at the time of the election, a resident of the State, and was not a legal voter and elector at the time he received the highest number of votes for the office in question. An issue was made up on this allegation, and tried by a jury, who found appellant was not eligible. The court thereupon decreed appellant was not eligible, and that the election was void. To reverse this decree this appeal is prosecuted.

Much testimony was heard, and the court gave all the instructions asked by both parties.

It appears appellant, whose election is contested, was a man of mature years, and had resided in this State continuously since 1838, and up to June, 1873. He was unmarried and made his home with his brother Charles, in Radner township

at this time, and had so done for some time previous, working some part of his brother's land, and engaging in some light pursuits of his own. He had not much personal property and no land, and no home but his brother's. He was registered as a voter of Radner township, in October, 1872, and was one of the judges of the election in the same in November, 1873, and was elected township collector in 1871 or 1872. In June, 1873, he packed up what little effects he had, and, with his horses and wagon, went West, in search of a new home, visiting the States of Iowa, Nebraska and Kansas. In Riley county, Kansas, a railroad bridge was being built, and he obtained a contract for hauling the timber and iron for it; went to Fort Scott, and was very sick there. At Fort Scott he left his team, and started by rail, December 22, 1873, to his brother Charles', in Radner township, having been absent about seven months.

It will be seen, by the proofs, that appellant did not remain long enough in any one State to gain more than a temporary residence in any one of them. He was called as a witness for the contestant, and, in answer to an interrogatory of contestant, as to his delay at the railroad bridge, if that was the point he aimed at when he started from home, he stated it was not; that he had no very definite point in view when he started; thought, at one time, he would see California; at another, that he would see Texas, or that he would go South, and so, he says, "I did not go where I thought I might go." He seemed to desire a climate different from that of this State, and if he found such, and the prospects good, he would settle, and locate a soldier's claim. He was like thousands of others who leave home in search of a better, and, like many of those thousands, not finding what he sought, he returned to that spot which had been so long a home to him —his brother's roof-tree; and at the election in April next after his return, his friends and neighbors again elected him collector of the township. The theory of the contestant is, that leaving his home in Radner without making any pro-

·vision for a return to it at some future day, was, *ipso facto*, such an abandonment as to deprive him of the right of claiming it as his home, should he return to it.

There is no question, the residence of appellant had been for years Radner township, making his home with his brother there. He had no other residence—no other home—and there he had exercised his political rights. The question, then, is, ·did his absence, under the circumstances given in evidence. create a forfeiture of those rights? He has acquired no new residence, for if he had the *animus* so to do, the *factum* is wanting. Never having acquired any other residence or home, his intention to resume his old home is made manifest by his actual return to it, which he had not forfeited by acquiring one elsewhere.

There is a strong analogy to the homestead right, as that can not exist without a residence. In the case of *Kitchell* v. *Burgwin et ux.* 21 Ill. 40, this ·court said, a homestead right would exist, though the head of the family should leave it, in search of another home in a distant State, and, being disappointed in finding one, might return to it.

We gather from all the testimony in the case the strong impression. if appellant could find, in his journeyings, a better climate than this, and other things suited, he would take up his residence in it. Not finding such, after an exploration of seven months, he returned to his old home, and we can ·not say he had forfeited it as his residence by means thereof, ·as he had gained no other residence.

In *Hayes et al.* v. *Hayes et al.* Sept. T. 1874, it was held, a residence in Iowa for two years, not being accompanied with an intention to remain there, was not a forfeiture of the original residence in Rock Island county, in this State.

So, in *Potts* v. *Davenport et al.* 79 Ill. 455, it was held, Davenport had not abandoned his homestead by prosecuting his business at Chicago, remaining there with his family two years.

In these cases, it is true, the parties had left portions of

their property at the old residence, and, in the last case, Davenport had reserved two rooms of his house, to be occupied in case he returned. The difference in the cases is, simply, that appellant, having no house of his own, no family, and no property save that which accompanied him, did not have it in his power to give the same evidence of an intention to return as in the other cases. Still, he acquired no other home, and he returned to that he rightfully claimed as a home.

Appellant was asked by a juror, when on his examination as a witness. this question: "What was your intention when you went away—was it on a visit you went away,.or for some other purpose?" Contestant objected to this question, and the court sustained it, and the witness was not permitted to answer. He was contestant's witness, and one well qualified to know, and, therefore, to speak of his own intentions; and, as intention was a very important element in the question involved in the contest, we are of opinion it was competent testimony, and should have gone to the jury, and it was error to exclude it.

As we have said, the court gave all the instructions asked by both parties. We think the first given for the contestant was calculated to mislead the jury. A residence is not lost by a party seeking another residence, until he has acquired another residence.

As, however, the merits of the case are so decidedly with appellant, and no ground for contest existing, we do not deem it necessary to go into a consideration of the instructions, as the decree will be reversed without a remandment of the cause.

We think it quite clear, from the testimony, that appellant did not leave this State with the settled intention of becoming a resident elsewhere. It was only conditional, and so long as it remained conditional, his residence must be held to have been in Radner township, in Peoria county.

For the reasons given, the decree is reversed.

*Decree reversed.*